**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**TAWANA MICHELLE DICKEY,**

     **Plaintiff,**

**vs.**                                                    **Case No. 4:06cv566-SPM/WCS**

**DOLLAR GENERAL CORPORATION,
and DOLGENCORP, INC., a wholly
owned subsidiary of DOLLAR
GENERAL CORPORATION,**

     **Defendants.**

_____/

**<u>REPORT AND RECOMMENDATION</u>**

This is a disability employment discrimination action brought against Plaintiff's

former employer, Dollar General, for alleged violations of the Florida Civil Rights Act,

Chapter 760, Florida Statutes.  Doc. 1, pp. 8-15.  The complaint alleged disability

discrimination and retaliation for having reported discriminatory remarks made by a

supervisor.  Doc. 1.  No federal claims are made.

This case was removed to federal court by Defendants in December of 2006

based upon diversity of citizenship.  Doc. 1.  Although the complaint is signed by

Plaintiff as a *pro se* party, doc. 1, p. 14, a notice of appearance of counsel was also

submitted indicating Plaintiff secured representation by counsel.[1]  Docs. 1, p. 15, and

doc. 2.  On July 23, 2007, however, Plaintiff's attorney filed a motion to withdraw, doc.

40, which was granted, doc. 46.  Plaintiff has been proceeding *pro se* in this matter

since then.

　　　　After discovery was completed, *see* docs. 45, 50, and 51, Defendants filed a

motion for summary judgment, doc. 61, supported by a separate statement of facts,

doc. 62, a notice of deposition transcript, doc. 63, and a notice of a supporting affidavit,

doc. 64.  After several extensions of time, Plaintiff filed her Statement of Undisputed

Facts, doc. 85, evidence in support of Plaintiff's opposition, doc. 86, and her response in

opposition to the summary judgment motion, doc. 87.  Defendant's motion for summary

judgment is ready for a ruling.

**Allegations of the complaint, doc. 1**

　　　　Plaintiff alleges that she suffers from a disability.  Doc. 1, p. 9, ¶ 6.  In Count I,

Plaintiff alleges that she was discriminated against due to her disability.  Plaintiff alleges

that she suffers from sarcoidosis,[2] which "does not allow her to lift over 40 to 50

pounds" and prevents her from "prolonged standing, walking or walking at a swift pace."

---

[1] The complaint was filed on June 29, 2006, in state circuit court, doc. 1, p. 8, and
the notice of appearance filed on or about October 25, 2006.  Doc. 1, p. 15.

[2] As explained on www.mayoclinic.com/health/carcoidosis/DS00251, sarcoidosis
is an inflammatory disease that starts in the lungs, but in time may affect virtually any
organ in the body, including the liver, skin, heart, nervous system and eyes.  The
disease mainly affects adults between the ages of 20 and 40, and black Americans are
particularly at risk.  Blacks are more likely to have severe, chronic symptoms than are
whites.  Sarcoidosis often goes away on its own without treatment, usually within two to
three years, although some people may have symptoms for a lifetime.  In rare cases
sarcoidosis can be fatal.  Strong anti-inflammatory medications are usually used to treat
sarcoidosis.

*Id.*, p. 10, ¶ 11.  Plaintiff asserts that in February, 2004, her supervisor, Doe Supple, "chided" her for moving too slow and for being unable to "put a full stock of U-boat on the shelves during the same (5) five hour period."  *Id.*, ¶ 12.  Plaintiff also alleges that Ms. Supple told her "in the presence of customers, that she would never have hired her with her disabilities, if she had know about them, because Dollar General Corporation does not need people like her to work for them."  *Id.*, ¶ 13.  Plaintiff states that when she complained about this remark, the District Manager told her to "provide a written statement from her Doctor regarding her work limitations and restrictions" within two weeks.  *Id.*, ¶ 14.  Plaintiff further alleges that on March 30, 2004, her District Manager told her that she could not return to work without the medical statement.  *Id.*, ¶ 15.  After she provided the medical statement, the District Manager told her that Defendant "refused to allow her to return to work and that she was being placed on (2) two weeks medical leave without pay."  *Id.*  She was then told by her District Manager that she could not return to work until she could work without restrictions.  *Id.*, p. 11, ¶ 16.  On April 5, 2004, she was placed on two weeks of medical leave until "she could provide medical documentation that she can work more than (4) four hours per day and that she could lift more than (12) twelve pounds at a time."  *Id.*, ¶ 17.

In Count II, Plaintiff contends that Defendant retaliated against her because she complained about the remarks by Ms. Supple.  *Id.*, ¶ 20.  The acts of retaliation are alleged in the subsequent paragraphs.  She alleges that her work days and hours were reduced and her schedule no longer was "constant" and no longer allowed her to schedule a physician's appointment after 3:00 p.m. *Id.*, ¶ 21.  She alleges that on March 4, 2004, her supervisor told her she had to work 7 to 8 hours that day because a

supply truck was due in and all employees were required to work extra hours.  *Id.*, p. 12,

¶ 22.  She asserts that in retaliation that day, her supervisor refused to allow her to get

some food to take her medications.  *Id.*, ¶ 23.  She alleges that she began to get a

severe headache from hypoglycemia, got some food, took her medication, and received

a written reprimand from her supervisor for doing so.  *Id.*, ¶ 24.  She alleges that she

was treated differently, in retaliation, because two other cashiers, who do not have

disabilities, were not required to work the same schedule.  *Id.*, ¶ 25.  She alleges her

supervisor denied her request for two days of leave, even though she had a doctor's

excuse.  *Id.*, ¶ 26.  Plaintiff alleges that she filed a formal complaint of discrimination on

May 4, 2004, and was terminated on May 7, 2004.  *Id.*, p. 12, ¶¶ 28-29.  She alleges

she was told she was terminated because her complaint of discrimination had been

received and she could not meet Defendant's work specifications.  *Id.*, p. 13, ¶ 30.

**Defendant's motion for summary judgment, doc. 61**

Defendant asserts that it did not discriminate against Plaintiff due to disability

because Plaintiff was not a "qualified individual with a disability who could perform the

essential functions of her job, with or without an accommodation."  Doc. 61, p. 2.

Furthermore, Defendant notes that Plaintiff has not identified a reasonable

accommodation that would have enabled her to do her job, and that would "not have

placed an undue hardship on Dollar General."  *Id.*

Defendant contends that Plaintiff's retaliation claim cannot be supported by the

evidence because Plaintiff worked extended hours *before* she complained of the

allegedly discriminatory remarks by Ms. Supple, and she was then taken off the work

schedule because of her doctor's note stating she could not perform the essential

functions of her job.  *Id.  See* also doc. 62, p. 14.  Defendant further argues that

Plaintiff's termination came *before* Plaintiff filed her Charge of Discrimination and, thus,

must fail as a matter of law.  Doc. 61, pp. 2-3.  Plaintiff's termination, argues Defendant,

was due to Plaintiff's inability to work because she never presented a note from her

doctor indicating she was fit to return to work.  Doc. 62, p. 2.

**Plaintiff's Response in Opposition, doc. 87**

Plaintiff contends that she is "disabled within the meaning of the Social Security

Act when her impairments are so severe that she is not only unable to do her previous

work, but cannot, considering her age, education, and work experience, engage in any

other kind of substantial, gainful work which exists in the national economy."  Doc. 87, p.

3.  Plaintiff contends that her ailments, sarcoidosis and osteoarthritis, qualify as

disabilities and she is disabled.  *Id.*, at 4.  Indeed, as will be discussed ahead, Plaintiff

appears to assert that she is receiving disability payments and, hence, must be disabled

as so defined under the ADA.

Though she has argued that she is so completely disabled that she cannot

engage in any work and thus is entitled to disability benefits, Plaintiff contends she can

do work.  She contends that Defendant could have accommodated her disability without

an undue hardship and that she could have performed the work with accommodations.

*Id.*, at 5.  Plaintiff also argues, however, that she "could perform the essential functions

of the store clerk position, with or without reasonable accommodations."  *Id.*  Plaintiff

asserts that she suffered retaliation after reporting the an allegedly discriminatory

remark by her assistant store manager.  *Id.*, at 7.  The remark was that the manager

"never would have hired her with her disabilities, if she had know about them because

Dollar General Corporation does not need people like her to work for them."  *Id.*, at 6.

Plaintiff also argues that Defendant cannot produce evidence that she misrepresented

or omitted information on her Employment application.  *Id.*, at  8.

**Rule 56 evidence**

Dollar General requires all persons seeking employment to complete an

employment application, which includes questions concerning criminal history.  Doc. 64-

2, Reeves affidavit, ¶ 5-6.  One such question is whether the applicant has ever "been

convicted of a crime (other than minor traffic offenses)."  *Id.*, at ¶ 6.  An applicant must

sign the application certifying that all information is true and correct.  *Id.*, at ¶ 7.  The

application contains a notice advising that "any misrepresentations or omissions of facts

called for are cause for refusal to hire or dismissal at any time without any previous

notice."  *Id.*  Plaintiff was aware of that certification on the employment application.  Doc.

63-2, pp. 33-34  as paginated on the electronic case filing system (ECF) (Plaintiff's

deposition, pp. 33-34).[3]

Dollar General has a policy that if it is discovered that an applicant has provided

false information on her application (including regarding her criminal history), the person

is not hired (if an applicant) or is terminated (if a current employee).  Doc. 64-2, p. 2,

Reeves affidavit, ¶ 8.  Dollar General conducts background checks on all persons who

---

[3] Plaintiff's deposition, which was taken on November 20, 2007, is electronically filed in three segments as an attachment to document 63.  The first segment consists of pages 1-35 and is cited as doc. 63-2, the number assigned by the electronic docket. The second segment contains pages 37-74, and is cited as doc. 63-3.  The third and final segment consists of pages 75-115, cited as doc. 63-4.  Defendant's supporting exhibits, filed with document 63, are cited with reference to the electronic docket listed and the document reference for the paper copy of the exhibits.  Both references are given because the *pro se* Plaintiff does not have access to the electronic docket citation.

have been offered employment and all applicants must complete a Background Check Authorization Form.  Doc. 64-2, p. 2, Reeves affidavit, ¶ 9.

Dollar General also has a policy that part-time employees like Plaintiff are provided up to two work weeks of leave in a twelve-month period of time.  Doc. 61; doc. 63-3, p. 13 on ECF (Plaintiff's deposition, p. 49); doc. 63, Defendant's ex. 9, p. 2.[4]  The policy provides that an employee who does not return to work after leave may be terminated.  Doc. 62, p. 2.  Plaintiff was aware of the policies and procedures and acknowledges receiving the Dollar General Employee Handbook in 2004.  Doc. 63-3, p. 12 (Plaintiff's deposition, p. 48); ex. 9, p. 2; doc. 86, p. 2.

Plaintiff was diagnosed in 2002 with a condition known as sarcoidosis.  Doc. 63-2; (Plaintiff's deposition, p. 25).  Plaintiff states that it is an immune system disease that can destroy the body's organs.  *Id.*  Plaintiff says that it causes her to walk slowly; she has "trouble breathing sometimes," coughs a lot, and cannot stand on her feet longer than two to three hours before needing to sit down.  Doc. 63-2; (Plaintiff's deposition, p. 26).  Plaintiff also has blurry vision sometimes, but her vision is corrected with prescription eyeglasses.  *Id.*, at 27.  Plaintiff testified she has no other problems performing routine daily life activities such as bathing, driving, cooking, dressing herself, eating, or sleeping.  Doc. 63-4, pp. 27-28; (Plaintiff's deposition, p. 101-102).

Plaintiff applied for part-time employment with Dollar General and completed an application on March 25, 2003.  Doc. 63-5, p. 5; (doc. 63, Defendant's ex. 2); doc. 63-2, p. 31 (Plaintiff's deposition, p. 31).  In response to two separate questions, "Have you

---

[4] Unless specifically marked as Plaintiff's exhibit, all exhibits referenced are to those submitted by Defendant with document 63.

ever been convicted of a crime," Plaintiff said "o" both times  *Id.*  Doc. 63-5, p. 5

(Defendant's ex. 2); doc. 63-5, p. 8 (Defendant's ex. 4).  That information is false as

Plaintiff has a criminal history dating back to 1981 and has numerous convictions,

including ten felonies.  Doc. 63-5, pp. 2-3 (doc. 63, ex. 1); *see also* doc. 63-2, pp. 16-19.

Plaintiff states in her statement of undisputed facts that she "provided the basic

data on her application, including her date of birth and criminal history."  Doc. 85, p. 2.

Plaintiff makes an unsupported assertion that she "answered 'yes' to being a convicted

[sic] of a crime."  *Id.*  However, Plaintiff has not provided any Rule 56 evidence to

support that claim and Plaintiff's statement, alone, is not evidence.[5]

Plaintiff began working part-time for Dollar General on October 29, 2003, as a

Store Clerk and Cashier.  Doc. 63-5, p. 7; (doc. 63, ex. 3); doc. 63-2, p. 28 (Plaintiff's

deposition, p. 28).  Plaintiff's salary was $5.50 per hour and, as a part-time employee,

she was not eligible for company-provided employment benefits.  Doc. 63-5, p. 5; (doc.

63, ex. 3); doc. 63-3, pp. 17-18 (Plaintiff's deposition, pp. 53-54).  Plaintiff received

Dollar General's policies and procedures, and the company's "Physical Requirements to

Work in a Store" form, and also completed many employment forms, including a

background authorization form.  Doc. 63-5, p. 10; (doc. 63, exhibits 4 and 6); *see also*

doc. 63-3, pp. 42-43, 45-46 (Plaintiff's deposition); Defendant's exhibits 3-9.  Plaintiff

also completed another employment form on October 29, 2003, doc. 63-5, p. 7 (ex. 3),

and the background check authorization form was completed on October 29, 2003.

Doc. 63-5, p. 8 (ex. 4).

---

[5] The only evidentiary materials presented under Rule 56 reveals Plaintiff twice
represented that she had *not* been convicted of a crime.  Doc. 63-5, pp. 5, 8.

The "Physical Requirements to Work in a Store" form advises an employee of the list of "physical requirements necessary to work in a position at a Dollar General Store" and the employee must indicate that he or she can "perform these essential job functions with or without a reasonable accommodation."  Doc. 63-5, p. 10; Defendant's ex. 6.  The form states the following requirements:  frequent walking and standing; frequent bending, stooping and kneeling to run check out station; stock merchandise and unload trucks; frequent handling of merchandise and equipment such as . . . two-wheel dollies and U-boats (six wheel carts); and "frequent and proper lifting of up to 40 pounds; occasional lifting of up to 55 pounds."  *Id.*  The form stated that Plaintiff had read the form and agreed that she could perform all of the essential job functions listed, with or without a reasonable accommodation.  Plaintiff signed it.  *Id.*; doc. 63-3, pp. 6-7 (Plaintiff's deposition, pp. 42-43, 45-46); Defendant's ex. 6; *see also* doc. 85, p. 4.

During her first few months of employment, Plaintiff mostly worked the cash register.  Doc. 63-4, p. 12, and doc. 63-3, p. 37 (Plaintiff's deposition, pp. 86 and 73).  In February of 2004, Mr. Donnell Miller became the Store Manager for Dollar General, store number 8728 where Plaintiff was employed as a Store Clerk.  Doc. 75-2, Miller affidavit, ¶ 4.  At that time, the Dollar Store where Plaintiff worked "did not have many employees."  Doc. 75-2, Miller affidavit, ¶ 5.  Mr. Miller states that since he did not have many employees, he had to require "each Store Clerk, including [Plaintiff], to perform all of their job functions, including unloading the trucks and lifting boxes weighing 40 to 55 pounds."  Doc. 75-2, Miller affidavit, ¶ 5.

On March 4, 2004, Plaintiff was scheduled to unload the truck "consistent with her job duties."  Doc. 75-2, Miller affidavit, ¶ 6.  This was the first time Plaintiff had been

scheduled to unload the truck as she previously had just been required to work the cash register.  Doc. 86-5, p. 58.  Upon learning of her responsibilities for that day, Plaintiff advised Mr. Miller that "she could not unload the truck because she had lifting restrictions."  Doc. 75-2, Miller affidavit, ¶ 7; doc. 63-3, p. 34 (Plaintiff's deposition, p. 70).  Mr. Miller was unaware of any restrictions for Plaintiff, but accepted her explanation and told her she "could just work at the cash register for the day."  Doc. 63-3, pp. 34, 37, and doc. 63-4, p. 1 (Plaintiff's deposition, pp. 70, 73, and 75); Doc. 75-2, Miller affidavit, ¶ 8.[6]  "Because Dollar General had no documentation regarding [Plaintiff's] alleged [lifting] restrictions," Mr. Miller was instructed by his Manager, Mr. Demarco Sutherland, to request that Plaintiff provide "a written doctor's statement concerning her restrictions."  Doc. 75-2, Miller affidavit, ¶ 9; doc. 63-3, pp. 34-35 (Plaintiff's deposition, pp. 70-71, 75).

Plaintiff reported in her deposition that on the same day she discussed her lifting restrictions with Mr. Miller (March 4th), the Assistant Store Manager, Doe Supple, told Plaintiff that she would not have been hired if Plaintiff's disability was known "because Dollar General does not and cannot use people like [Plaintiff]."  Doc. 63-4, pp. 13-14 (Plaintiff's deposition, pp. 87-88).   Plaintiff acknowledged that Ms. Supple made the comment because Plaintiff could not perform the physical requirements of the store clerk position.  *Id.*, at 87-88.  Plaintiff has provided an affidavit from a customer of the store, Annie Mae Evans, who overheard the comment by Ms. Supple.  Doc. 86-4, pp. 3-

---

[6] Plaintiff has pointed to the evidence and asserts that she was not "scheduled" to work or unload the truck.  Doc. 85, p. 4; *see* doc. 63-7, p. 3; Plaintiff's exhibit 21. Plaintiff's statement indicates that Defendant did not schedule Plaintiff to work but called her to come in to work.  Doc. 85, p. 4.  Whether Plaintiff was scheduled or called in to work is a distinction without a meaningful difference.

4.  Ms. Evans states she personally heard Ms. Supple tell Plaintiff, "I hired you, but if I had known you had a disability, I would not have hired you."  Doc. 86-4, p. 3.

After Plaintiff complained about Ms. Supple's comment to the District Manager, Demarco Sutherland, he met with Plaintiff on or about March 9, 2004, to discuss her complaint.[7]  Doc. 63-4, pp. 2-3 (Plaintiff's deposition, pp. 76-77).  During this meeting, Mr. Sutherland also requested Plaintiff to provide, within two weeks, a doctor's statement concerning her ability to work as a Store Clerk.[8]  *Id.*  On March 23 and 24, 2004, Plaintiff failed to report for work or call, and did not bring in a written statement from her doctor.[9]  Doc. 63-4, pp. 3-4, 25 (Plaintiff's deposition, pp. 77-78, 99); ex. 18, p.

---

[7] In her evidence, Plaintiff provided the Defendant's response to the Florida Commission on Human Relations.  Doc. 86-5, pp. 56-63.  Within that document, Dollar General explained the comment from Ms. Supple as follows:

> According to Ms. Supple's written statement, she and [Plaintiff] were having a casual conversation when [Plaintiff] asked (hypothetically) if she would have hired [Plaintiff] had she known about [Plaintiff's] medical condition. . . .   Ms. Supple advised [Plaintiff] that according to Dollar General policy an associate is required to be able to perform certain duties and given those requirements [Plaintiff] probably would not have been hired had it been known that [Plaintiff] was unable to perform the required duties.  Mrs. Supple was only explaining to [Plaintiff] [the company's] need for employees that can perform all the essential functions of their job.  Ms. Supple denied making any statements to the effect that Respondent "does not need" people "like her."

Doc. 86-5, p. 60; *see also* doc. 86-6, p. 58 (Plaintiff's ex. 27).

[8] The Personnel Schedule indicates Plaintiff was scheduled to work during this two week period in which she was given time to obtain a note from her doctor concerning her limitations.  Doc. 63-7, pp. 4-6.

[9] Review of Plaintiff's scheduled work hours reveals that during February, 2004, Plaintiff worked as much 6 hours a day for several days, as much as 8 hours on 1 day, and 9 hours on the day of the unloading of the truck.  Doc. 63-7, pp. 1-3.  Indeed, three employees were scheduled for 9 hours on the "truck" day, Thursday, March 4, 2004. *Id.*, at 3.  During the several weeks following, March 6, 2004, to April 2, 2004, Plaintiff

18; doc. 63-7, p. 6.  Plaintiff was told that she could not be scheduled to work until she brought in the doctor's statement.  Doc. 63-4, p. 4 (Plaintiff's deposition, p. 78); doc. 85, p. 5.  Plaintiff was taken off the work schedule and required to bring in the doctor's statement describing her work limitations.  Doc. 86-6, p. 13 (ex. 17).

On April 1, 2004, Plaintiff provided her Store Manager, Mr. Miller, with a written doctor's statement[10] concerning her restrictions.  Doc. 75-2, Miller affidavit, ¶ 10.  The note stated: "Due to Ms. Dickey's arthritis, she should limit her standing to no more than 4 hours per day & limit lifting to 15 lb. or less."  Doc. 75-2, Miller affidavit, ¶ 10; doc. 63-6, p. 3 (Defendant's ex. 14); doc. 63-4, p. 6 (Plaintiffs' deposition, p. 80).  Given those restrictions, Plaintiff would not be able "to perform the essential functions of her job, namely unloading the truck would require her to lift 40 to 55 pounds."  Doc. 75-2, Miller affidavit, ¶ 11; doc. 62, p. 6.  Thus, Plaintiff was placed on two weeks leave under Dollar General's Medical Absence Leave policy.  Doc. 75-2, Miller affidavit, ¶ 11.  Pursuant to that policy, an employee must provide a "fitness for duty certification" from the employee's doctor at the end of the leave period.  Miller affidavit, ¶ 11.  At the end of her two week medical leave (April 15, 2004), Plaintiff did not provide the note from her doctor (the required "fitness for duty certification").  Miller affidavit, ¶ 12.  Indeed, Plaintiff's doctor refused to provide the fitness certification.  Doc. 63-4, p. 7 (Plaintiff's deposition, p. 81); doc. 62, p. 7.  Plaintiff's physician would not give her a fitness for duty

_____

continued to be scheduled for up to six hours shifts.  *Id.*, at 4-7.

[10] The doctor's statement was dated on March 31, 2004.  Doc. 63-4, p. 5 (Plaintiff's deposition, p. 79).  Plaintiff contends she gave the doctor's note to Mr. Miller on March 31, 2004.  Doc. 85, p. 5.  Whether she gave the note to Mr. Miller on April 1st of March 31st is not a material fact.

certification saying, according to Plaintiff, that he would not risk "a liability" by providing

Plaintiff a note.  Doc. 63-4, pp. 6, 7 (Plaintiff's deposition, pp. 80-81).[11]

Dollar General sent Plaintiff correspondence on April 28, 2004, requesting that

Plaintiff contact Dollar General to discuss her intention or ability to return to work.  Doc.

63-4, p. 8 (Plaintiff's deposition, p. 82); doc. 63-6, p. 4 (Defendant's ex. 15).  The letter

advised Plaintiff that she had "exhausted the company-provided leave for which you are

eligible" and required Plaintiff to contact the Leave Administrator, Sharon Cockrill, within

10 calendar days of the date of the letter "to discuss your intent and/or ability to return

to work."  Doc. 63-6, p. 4 (Defendant's ex. 15)[12]; doc. 63-4, p. 8 (Plaintiff's deposition, p.

82).  The letter closed by stating that if the Administrator did not hear from Plaintiff

within 10 days, the Company would assume that Plaintiff intended to "voluntarily resign"

her employment.  *Id.*; *see also* doc. 86-6, p. 7 (Plaintiff's ex. 15).

Plaintiff did not provide Dollar General with any documentation regarding her

fitness to return to work.  Doc. 75-2; Miller affidavit, ¶ 12.  Plaintiff's employment was

terminated on May 5, 2004, because she could not perform the essential functions of

the job.  *Id.*, at ¶ 13; doc. 63-4, p. 9 (Plaintiff's deposition, p. 83).  The Personnel Action

Form states that Plaintiff resigned her position because she failed to return to work from

leave.  Doc. 63-6, p. 5 (Defendant's ex. 16).  The form also notes that the last day

Plaintiff worked was March 30, 2004, and provides a termination date of May 5, 2004.

---

[11] In her deposition, Plaintiff references the predicament of receiving disability payments and having a physician provide a fitness for work certification.  Doc. 63-4, pp. 8-9, 12 (Plaintiffs' deposition, pp. 82-83, 86).  Plaintiff also states in her statement of undisputed facts that she was receiving disability payments.  Doc. 85, p. 4.  The kind of disability payments is not explained.

[12] This exhibit is also marked as Exhibit B.

*Id.* Plaintiff was advised by Mr. Sutherland on May 7, 2004, that her employment was terminated. Doc. 86-5, pp. 39, 43.[13]

In her deposition, Plaintiff acknowledged that even with an accommodation, she still would not be able to perform all the essential functions of the job, that is, lifting heavy boxes. Doc. 63-4, pp. 19-20 (Plaintiff's deposition, pp. 93-94). The only accommodation Plaintiff suggested was for Dollar General to have another employee perform her tasks of unloading trucks and lifting boxes. *Id.* Plaintiff acknowledged that if she could have physically performed all of the job functions, including unloading the trucks, she would not have had any problems with Dollar General. *Id.*, at 18 (Plaintiff's deposition, p. 92).[14]

Plaintiff has provided records of reporting her complaints to the ERC (Employee Relations - Complaints) of Dollar General. Docs. 86-6, p. 8, *et. seq.* (Plaintiff's ex. 16). On January 9, 2004, Plaintiff called and reported "having a problem with her manager." Doc. 86-6, p. 11 (Plaintiff's ex. 16). Plaintiff complained that the manager did not "know how to talk to her employees and she doesn't put a schedule up." *Id.* On March 6, 2004, Plaintiff called ERC again to report that "she has a disability and she stated that ASM [Assistant Store Manager] told her that she would not have hired her with a

---

[13] It is noted that May 5th was only 7 days from the date of the letter, and May 7th was 9 days from the date. Doc. 63-6, p. 4 (Ex. 15).

[14] However, Plaintiff has provided evidence of several incidences at work which resulted in written counseling records. Doc. 86-6, pp. 1-3 (Plaintiff's exhibit 12). Those records reveal Plaintiff did not adhere to her work schedule (March 4, 2004), took unauthorized breaks, using a cell phone in the store, leaving "cash wrap with no cashier, questioning management authority in front of customers" and not completing tasks (also March 4, 2004), and cursing at her supervisor (March 29, 2004). *Id.* Plaintiff refused to sign any of the three "progressive counseling records." *Id.*

disability because they could not use her in the store because employees needed to work."  Doc. 86-6, p. 8 (Plaintiff's exhibit 16).  A "diary" entry below the complaint indicates a customer who "heard the disability statement called in and wanted to say that [Plaintiff] feels like this [is] a hostile work environment."  Doc. 86-6, p. 8 (Plaintiff's ex. 16).

Another complaint was registered by Plaintiff on March 29, 2004, at 10:29 a.m. about being suspended.  Doc. 86-6, p. 9 (Plaintiff's ex. 16).  Plaintiff reported being "suspended" and wanted "to speak with someone."  *Id.*  Plaintiff said that "she is filing charges against Dollar General."  *Id.*  The ERC office left a voicemail for the "district manager, Demarco Sutherland . . . and ask[ed] him to give [Plaintiff] a call."  *Id.*  Mr. Sutherland received the "voicemail on Monday, March 29th @ 11:26 am."  *Id.*  Plaintiff made another call that same day, March 29, 2004, approximately a half hour later, at 10:54 a.m., saying "she was suspended and she receives disablitly [sic]."  Doc. 86-6, p. 10 (Plaintiff's ex. 16).  She told ERC that "the store has her information on what hours she can and can not work."  *Id.*  "She stated the manager told her if she can not be there then she was suspened [sic]."  *Id.*  When the ERC employee advised Plaintiff that he or she would "be glad to contact the" district manager, Plaintiff said, "forget it I will get a lawyer."  *Id.*  A voicemail was left for the district manager, Mr. Southerland, concerning Plaintiff's call which he received at approximately 11:38 a.m., on March 29th.  *Id.*

The "Incident Report" completed by ERC indicates another call was received from Plaintiff on April 7, 2004, and she said she wanted "to speak with the regional manager regarding her medical leave."  Doc. 86-6, p. 10 (Plaintiff's ex. 16).  Plaintiff

also "stated she [had] retained a lawyer." *Id.* It was explained to Plaintiff that if she had "retained a lawyer," ERC could no longer speak with Plaintiff. *Id.* Another call was received on April 7th from Plaintiff stating "she needs something stating she is being placed on medical leave." Doc. 86-6, p. 12 (Plaintiff's ex. 16). Plaintiff was given the telephone number for information on FMLA (Family Medical Leave Act) Leave. *Id.* Another call was received concerning Plaintiff's medical leave on April 15, 2004. Doc. 86-6, p. 12 (Plaintiff's ex. 16). Plaintiff said she had spoken to her district manager "about being placed on medical leave." *Id.* Plaintiff said the district manager told her the "Home Office said she had to have a note from her Dr. saying she can work at [Dollar General]." *Id.*

Plaintiff filed a Charge of Discrimination with the Florida Commission on Human Relations on May 5, 2004. Doc. 63-4, p. 10 (Plaintiff's deposition, p. 84); Doc. 63-6, pp. 6-7 (Defendant's ex. 17). Plaintiff signed the form on May 4th, but a stamp at the top of the document indicates it was "received" by the Florida Commission on Human Relations on May 5, 2004, at 3:02 pm. Doc. 63-6, pp. 6-7 (Defendant's ex. 17). Plaintiff alleged discrimination due to her disability and retaliation for complaining of Ms. Supple's comments. Doc. 63-6, p. 6 (ex. 17); doc. 63-4, p. 11 (Plaintiff's deposition, p. 85). Plaintiff claimed that after she provided Dollar General with her medical work restrictions, the company "refused to provide reasonable accommodations, but rather decided to put [her] on leave without pay." Doc. 63-6, p. 6 (ex. 17).

After Plaintiff filed this lawsuit, Dollar General conducted an investigation into Plaintiff's claims. Reeves affidavit, ¶ 10. The investigation, which included review of Plaintiff's criminal background, reveals that she had an extensive criminal record dating

back to the 1980s.  Doc. 62, p. 12; doc. 63-5, pp. 2-3 (ex. 1).  Many of Plaintiff's

convictions were for crimes involving dishonesty and theft.  Plaintiff's deposition; doc.

63-5, pp. 2-3 (ex. 1).  Dollar General conducts background checks on new employees,

but Plaintiff did not provide her correct social security number on her paperwork when

she was hired.  Doc. 62, p. 12; doc. 63-3, pp. 2-8 (Plaintiff's deposition, pp. 38--44); doc.

63-5, pp. 5, 7-9, and 15 (Defendant's exhibits 3-4, 10); doc. 86-6, p. 6 (Plaintiff's ex. 14).

The incorrect number ended in an 8.  *Id.*

A letter was sent to Plaintiff on December 9, 2003, from Dollar General indicating

it had received notification from the Social Security Administration that Plaintiff's social

security number as listed on the Employer's payroll system "did not match the records

of the SSA."  Doc. 63-5, p. 15.  The SSA provided Plaintiff's correct number to Dollar

General, a number ending in 3.  *Id.*, p. 16.  Plaintiff correctly listed her social security

number on the charge of discrimination she filed with the Florida Commission on

Human Relations, a number ending in 3.  Doc. 63-4, p. 10 (Plaintiff's deposition, p.

84).[15]

---

[15] Plaintiff argues that even though she did not truthfully complete the March 25, 2003, employment application, that should not matter because an application is only good for 90 days.  Doc.  85, p. 2.  While it may be true that an applicant might need to resubmit an application if she has not been hired within 90 days, the false statements are still false.  Moreover, when plaintiff completed the background check authorization for Dollar General on October 29, 2003, she *again* falsely stated she had never been convicted of a crime, and she again sought to misrepresent her social security number, using the number ending in 8.  Doc. 63-5, p. 8; *see also* doc. 86-6, p. 16 (Plaintiff's exhibit 20).  She falsely reported on more than one occasion that she had never been convicted of a crime and provided an incorrect social security number.  Doc. 86-6, p. 16 (Plaintiff's exhibit 20).  The last page of that application under the "Agreement" section states that the application is certifying "that all information on this application and during the application process is true, complete and correct to the best of my knowledge."  Doc. 86-6, p. 17 (Plaintiff's exhibit 20).  Further, it states, "I understand that misrepresentations, or omissions of facts called for, are cause for refusal to hire or for

The district manager, Mr. Sutherland wrote a statement on April 22, 2004, and stated that Plaintiff "was asked to provide a doctor's note listing her limitations so we would know what we could work her [sic] and what she could do."  Doc. 86-6, p. 13 (Plaintiff's ex. 17).  He said that after Plaintiff was placed on medical leave, he asked her to provide a "release stating what her limitations where [sic] once again."  *Id.*  At that time, he spoke with Plaintiff about Dollar General's "physical limitations policy."  *Id.*  He wrote another statement on May 20, 2004, stating that he spoke with Plaintiff by phone on May 7th.  Doc. 86-6 (Plaintiff's ex. 17, p. 2).[16]  He told Plaintiff her employment was being terminated "due to her not being able to return to work from her leave."  *Id.*  When Plaintiff asked why, she was informed that "she did not meet our physical limitation policy."  *Id.*  Plaintiff said, "That it was funny that [she] was working before and nobody had a problem."  *Id.*  Mr. Sutherland reported that he was just doing as he was told and she responded, "That's okay, I have already talked to a lawyer anyway."  *Id.*  Mr. Sutherland said he "was aware of that and that was fine" and that was the end of their discussion.  *Id.*

Plaintiff has also provided a statement from Lee Thomas, who was the person who hired Plaintiff.  Doc. 86-6, p. 14 (Plaintiff's ex. 18).  Plaintiff informed Mr. Thomas that "she was taking a steroids medication" and he asked Plaintiff if it would interfere with her work.  *Id.*  She replied, "No it will not, I have been out of work for a while and I

_____

dismissal at any time without any previous notice."  *Id.*  Plaintiff did not just incorrectly write her social security number on the form.  She also incorrectly "bubbled" in or shaded in the wrong circles underneath the hand-written numbers to misrepresent her social security number.  Doc. 63-5, p. 8.

[16] This page is in the "hard copy" of the file, but apparently did not get properly scanned and is not on the electronic court docket.

am just ready to get back." *Id.* At that time, Mr. Thomas read the physical requirements for the job aloud to Plaintiff and she "signed at the bottom of the form indicating that she was able to complete the physical requirements." *Id.* Mr. Thomas reported that Plaintiff worked for him for "two months without any problems." *Id.* At one point, Plaintiff asked Mr. Thomas if she could come in early to help him "unload the truck at 6 am" but he declined because Plaintiff was needed "later that afternoon to put up the items from the truck." *Id.* Mr. Thomas reported that Plaintiff's "assignments were to stock the items closest to her register, like the health and beauty products and snacks." *Id.*

**Analysis**

**Retaliation Claim**

To establish a claim for unlawful retaliation under the ADA and the Florida Civil Rights Act, "the plaintiff must show (1) that she engaged in statutorily protected expression; (2) that she suffered an adverse employment action; and (3) that there is some causal relation between the two events." Meeks v. Computer Assocs. Int'l, 15 F.3d 1013, 1021 (11th Cir. 1994), *quoted in* Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1363 (11th Cir. 2007). The burden is initially on the employee to show the above three elements as the basis for the *prima facie* case, and then the burden shifts to the employer to rebut the presumption of retaliation "by producing legitimate reasons for the adverse employment action." Drago v. Jenne, 453 F.3d 1301, 1307 (11th Cir. 2006).

In her complaint, Plaintiff claimed retaliation for having reported the discriminatory comments made by Doe Supple. Doc. 1, p. 11. Plaintiff alleged that the conditions of her employment changed and she was working fewer hours. *Id.* Plaintiff

further alleged that after she filed her Charge of Discrimination, her employment was terminated. *Id.*, at 12.

Plaintiff has shown that she engaged in statutorily protected activity when she filed a Charge of Discrimination and when she complained about the comment made by Ms. Supple.   This case turns on the other elements of this claim and Defendant's production of a legitimate reason for the adverse employment actions.

It is undisputed, however, that Plaintiff suffered no adverse employment consequences from having reported the comment by Ms. Supple.  It was that report, which notified Defendant that Plaintiff could not lift boxes and unload the truck, that caused Defendant to ask for a physician's description of Plaintiff's job limitations. Defendant had a legitimate business reason to obtain objective evidence as to Plaintiff's job limitations, for its own protection as well as for Plaintiff's safety.  Furthermore, there were no adverse consequences in Plaintiff's work schedule as she was still generally scheduled to work up to 6 hours in a work day.  *See* doc. 63-7, pp. 1-7.

Defendant has also shown that the termination of Plaintiff's employment was not due to her charge of discrimination.  First, as will be described in detail ahead, it is undisputed that an ability to lift heavy boxes and unload a truck was an essential requirement of Plaintiff's job.  It is undisputed that this was the job description when Plaintiff was hired.

It is also undisputed that Plaintiff failed to provide Dollar General with a "fitness to return to work certification from her doctor."  Doc. 62, p. 2.  That requirement was imposed upon Plaintiff in the beginning of April, 2004.  It was a reasonable requirement, as explained above, for the protection of Defendant and for Plaintiff's safety.  Plaintiff

provided the doctor's note, describing significant work limitations.  The note reasonably

prompted her two-week medical leave.  To return to work after April 15th, Plaintiff was

to provide a fitness certification.  Plaintiff did not comply with that requirement, and

because Plaintiff did now show that she was able to perform the essential functions of

her job and did not return to work after leave, Defendant terminated Plaintiff's

employment.  *Id.*

Additionally, Plaintiff must show causation to prove a claim of retaliation.

Causation may be established by showing close temporal proximity between the

statutorily protected activity and the adverse employment action.  *See* Brungart v.

BellSouth Telecomm., Inc., 231 F.3d 791, 798-99 (11th Cir. 2000).  Evidence of

causality does not exist, however, where adverse employment actions were

contemplated and set into motion prior to the statutorily protected activity.  *See* Clark

County Sch. Dist. v. Breeden, 532 U.S. 268, 272, 121 S.Ct. 1508, 1510-11, 149 L.Ed.2d

509 (2001) ("Employers need not suspend previously planned transfers upon

discovering that a Title VII suit has been filed, and their proceeding along lines

previously contemplated, though not yet definitively determined, is no evidence

whatever of causality"), *quoted in* Cotton v. Cracker Barrel Old Country Store, Inc., 434

F.3d 1227, 1233 (11th Cir. 2006).  The Eleventh Circuit has also held that "in a

retaliation case, when an employer contemplates an adverse employment action before

an employee engages in protected activity, temporal proximity between the protected

activity and the subsequent adverse employment action does not suffice to show

causation."  Drago v. Jenne, 453 F.3d 1301, 1308 (11th Cir. 2006), *relying on* Cotton,

434 F.3d at 1232, and <u>Clark County School Dist.</u>, 532 U.S. at 272, 121 S.Ct. at 1510-11.

The evidence here reveals that Plaintiff knew *before* she filed her claim that she had to provide a certification of her fitness to perform the essential requirements of the job and she was unable to do so.  Plaintiff received the letter from Dollar General on April 28, 2004, giving her another ten calendar days to provide a doctor's certification that she could do the work.  The letter required Plaintiff to contact Dollar General to discuss her "intention or ability to return to work."  Doc. 63-6, p. 4 (Defendant's ex. 15).  This occurred before Plaintiff filed her claim.  Plaintiff did not have leave time, and was not able to work without the fitness certification.  It is true that Plaintiff learned she was terminated sooner than "10 calendar days" from the date of the letter, but it is also true she had been required to provide that certification earlier and failed to do so.  Plaintiff had not returned to work, and there was no indication for the employer that she would be able to do so.  The evidence here reveals that Plaintiff's termination was due to her inability to return to work and not due to retaliation for filing the Charge of Discrimination.  Defendant is entitled to summary judgment on the retaliation claim.

**Discrimination Claim**

Defendant argues that the one alleged comment by the Assistant Store Manager even if true, was only a "stray remark by a non-decision maker that was not indicia of discrimination."  Doc. 62, p. 2.  Defendant also contends that Plaintiff "is not a qualified individual with a disability who can perform the essential functions of the job with or

without a reasonable accommodation."  Doc. 61, p. 4.  Defendant asserts that summary

judgment should be granted because Plaintiff cannot establish any of the three

elements required in a disability discrimination claim.  *Id.*, at 4-5.

Plaintiff's claims of disability-discrimination were brought under the Florida Civil

Rights Act.  Such claims are analyzed by using the same burden-shifting framework as

employed for federal Americans with Disabilities Act claims.  D'Angelo v. ConAgra

Foods, Inc., 422 F.3d 1220, 1224 n.2 (11th Cir. 2005), *cited in* Holly v. Clairson

Industries, L.L.C. 492 F.3d 1247, 1255 (11th Cir. 2007).  To establish a *prima facie* case

of disability discrimination, Plaintiff must show three elements: (1) that she is disabled

(2) that she is a qualified individual; and (3) that she was subjected to unlawful

discrimination because of her disability.  Earl v. Mervyns, Inc., 207 F.3d 1361, 1365

(11th Cir. 2000), *citing* LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 835 (11th

Cir. 1998).

For the first element of an ADA claim, a plaintiff qualifies as "disabled" under the

ADA if she has "(A) a physical or mental impairment that substantially limits one or more

of the major life activities . . .; (B) a record of such an impairment; or (C) [is] regarded as

having such an impairment."  42 U.S.C. § 12102(2).  Major life activities are defined by

the Equal Employment Opportunity Commission ("EEOC") as "functions such as caring

for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing,

learning, and working."  Greenberg v. BellSouth Telecommunications, Inc., 498 F.3d

1258, 1264 (11th Cir. 2007), *quoting* 29 C.F.R. § 1630.2(i); Cash v. Smith, 231 F.3d

1301, at 1305 (11th Cir. 2000).

The ADA requires a Plaintiff to prove her disability by presenting evidence that she is substantially limited by her impairment.  Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 198, 122 S.Ct. 681, 691-92, 151 L.Ed.2d 615 (2002).  The Supreme Court has held that "to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives."  Toyota Motor Mfg., 534 U.S. at 198, 122 S.Ct. at 691.

Plaintiff's condition (sarcoidosis) only imposes minimal limitations upon her: an inability to lift more than 15 pounds or to stand for more than two to three hours per day. Doc. 61, p. 6.  As correctly argued by Defendant, while those limitations would prevent her from working in its Store Clerk position, since the job requires some significant lifting, it would not preclude Plaintiff from working in numerous other jobs.  *Id.*, at 9. "When the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs."  Sutton v. United Air Lines, Inc., 527 U.S. 471, 491, 119 S.Ct. 2139, 2151, 144 L.Ed.2d 450 (1999), quoted in Greenberg v. BellSouth Telecommunications, Inc., 498 F.3d 1258, 1264 (11th Cir. 2007).

Plaintiff has not shown that she has an impairment that "substantially" limits her in any major life activity.  While Plaintiff may have some minor limitations in her physical abilities such as lifting heavy boxes, these are not substantial limitations.  *See* Ray v. Glidden Co., 85 F.3d 227, 229 (5th Cir. 1996) (finding that although the plaintiff could not perform "heavy lifting," he could do some lifting and, thus, was not "substantially limited in a major life activity" as required for a claim of disability under § 12102(2)(A)),

*relying on* Dutcher v. Ingalls Shipbuilding, 53 F.3d 723, 726 (5th Cir. 1995).  Plaintiff has

not shown that she cannot care for herself, nor has Plaintiff shown that she is "unable to

work in a broad class of jobs."  Indeed, Plaintiff would be fully able to work in a

sedentary or light work cashier position at a wide variety of stores.  *See* Ray, 85 F.3d at

229 (quoting 29 C.F.R. § 1630(j)(3)(i) which provides, "[t]he inability to perform a single,

particular job does not constitute a substantial limitation in the major life activity of

working."); *see also* Dutcher, 53 F.3d at 727.

Plaintiff seems to argue that she is disabled for purposes of social security.  This

is indeed an odd argument.  To be entitled to social security benefits, Plaintiff must

show that she cannot perform *any* job that exists in the national economy, considering

her age and work skills.[17]  If Plaintiff is capable of doing cashier work without any heavy

lifting, she is probably not entitled to social security disability benefits at all.

Moreover, Plaintiff does not demonstrate that she is a "qualified individual."

Under the second required element for a disability discrimination claim, an individual is

"qualified" if "she, with or without reasonable accommodation, can perform the essential

functions and job requirements of the position the individual holds."  Earl, 207 F.3d at

1365, *citing* 42 U.S.C. § 12111(8); Southeastern Community College v. Davis, 442 U.S.

397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979).

---

[17] A disability for social security benefits is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).  A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

Plaintiff has admitted that lifting  more than 15 pounds is an essential function of the Store Clerk position for Dollar General.  Plaintiff's deposition, pp. 42, 45-46; Miller affidavit, ¶ 5.  This is so because Mr. Miller only had a few employees and his employees had to do all of the work, including some heavy lifting.  The only accommodation suggested by Plaintiff was to have other employees perform this function of the job for her.  This is not a reasonable accommodation.

> An employer must provide reasonable accommodations for employees with known disabilities unless such accommodations would result in undue hardship to the employer.  *See* Morisky v. Broward County, 80 F.3d 445, 447 (11th Cir. 1996).  An accommodation is reasonable, and thus required under the ADA, only if it allows the employee to perform the essential functions of the job.  *See* LaChance, 146 F.3d at 835 (citing 29 C.F.R. § 1630.2( o) (2)(ii) (1995)).
>
> "Essential functions" are the fundamental job duties of a position that an individual with a disability is actually required to perform.  *See* 29 C.F.R. § 1630.2(n)(2)(1).  In determining what functions are deemed essential, the ADA states "consideration shall be given to the employer's judgment . . . and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job."  42 U.S.C. § 12111(8).  A job function also may be essential if there are a limited number of employees among whom performance of the job can be distributed.  *See* 29 C.F.R. § 1630.2(n)(2)(ii); Holbrook v. City of Alpharetta, 112 F.3d 1522, 1526 (11th Cir. 1997).

Earl, 207 F.3d at 1365.

Defendant has presented evidence that being able to frequently walk, stand, bend, stoop, kneel, and lift boxes to unload trucks and put merchandise on the shelves is an essential function of the Store Clerk position.  Miller affidavit, ¶ 5.  Plaintiff was aware of those physical requirements.  Doc. 63-3, pp. 9-10 (Plaintiff's deposition, pp. 45-46).  Plaintiff has not identified an accommodation that would enable *her* to perform the essential functions of her job as Store Clerk.

> The burden of identifying an accommodation that would allow a qualified employee to perform the essential functions of her job rests with that employee, as does the ultimate burden of persuasion with respect to showing that such accommodation is reasonable.  *See* Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1286 (11th Cir. 1997).  Furthermore, "where a plaintiff cannot demonstrate 'reasonable accommodation,' the employer's lack of investigation into reasonable accommodation is unimportant."  Willis v. Conopco, Inc., 108 F.3d 282, 285 (11th Cir. 1997).

Earl, 207 F.3d at 1367.  The only suggested accommodation from Plaintiff was to have

*another* Store Clerk perform those duties (unloading trucks and lifting the 40-55 pound

boxes) for her.  Doc. 63-4, pp. 17-19 (Plaintiffs' deposition, pp. 91-93).  That would

result in an undue hardship and burden on the Defendant because it would require the

employer to pay another employee to be at work to perform part of Plaintiff's job.  The

Eleventh Circuit has held that "[a]n employer is not required by the ADA to reallocate job

duties in order to change the essential functions of a job."  Holbrook v. City of

Alpharetta, Ga., 112 F.3d 1522, 1528 (internal quotation omitted).[18]

An accommodation is "reasonable" and necessary under the ADA, in turn, only if it enables the employee to perform the essential functions of the

---

[18] Significantly, what is reasonable for each individual employer is a highly fact-specific inquiry that will vary depending on the circumstances and necessities of each employment situation.  Federal regulations promulgated pursuant to the ADA expressly note that:

> [a]n employer or other covered entity may restructure a job by reallocating or redistributing non-essential, marginal job functions. . . .  An employer or other covered entity is not required to reallocate essential functions.  The essential functions are by definition those that the individual who holds the job would have to perform, with or without accommodation, in order to be considered qualified for the position.

Holbrook, 112 F.3d at 1527-28, *quoting* 29 C.F.R. Part 1630, Appendix at 344.  *See also* Milton v. Scrivner, Inc., 53 F.3d 1118, 1124 (10th Cir. 1995) (concluding "[a]n employer is not required by the ADA to reallocate job duties in order to change the essential functions of a job.").

> job. Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1259-60 (11th Cir.
> 2001); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 835 (11th Cir.
> 1998); *see also* 29 C.F.R. § 1630.2( o)(1)(ii) ("The term reasonable
> accommodation means: . . . Modifications or adjustments to the work
> environment, or to the manner or circumstances under which the position
> held or desired is customarily performed, that enable a qualified individual
> with a disability to perform the essential functions of that position").

Holly v. Clairson Industries, L.L.C. 492 F.3d 1247, 1256 (11th Cir. 2007).

Here, Plaintiff has not come forward with evidence of a reasonable accommodation that would not burden the employer. Nor has Plaintiff demonstrated any accommodation would permit *her* to perform the essential functions of her job. Rather, Plaintiff simply desires to only perform *part* of her job and require another person to perform her remaining job responsibilities. For this additional reason, Defendant is entitled to summary judgment on the disability discrimination claim.

Although unnecessary to the recommendation, Plaintiff has failed to provide evidence of discrimination due to disability. Plaintiff alleged a comment by the Assistant Store Manager, Ms. Supple, that Plaintiff would not have been hired if she had known of Plaintiff's disability. This is not a discriminatory comment. It is no more discriminatory than if an employer had informed a person that she could not be hired as a typist because she could not type due to hand impairments (or due to a lack of training or any of a number of reasons a person might not be able to type adequately). It is not discriminatory under the ADA to truthfully describe the essential requirements of a job to a prospective or existing employee.

That Plaintiff was required to bring in a doctor's note explaining her work restrictions was also not discriminatory. An employer must have objective evidence of an employee's physical limitations in order to make decisions about whether to modify

the employee's job or to terminate the employee for inability to perform the essential requirements of the job.  Plaintiff failed to provide any fitness to return to work certification and, without such, Plaintiff failed to provide evidence that she was able to do the job at Dollar General.  Because Plaintiff never made any official request of an accommodation to her employer, there was no need for Defendant to take any further steps to assist her in returning to work.  Plaintiff's only suggested accommodation, made after her employment ended, was simply to allow to her only work the cash register.  However, Plaintiff knew going into this employment that a position at Dollar General required her to perform cash register duties and stocking duties requiring that she lift boxes heavier than her physical abilities would permit (40-55 pounds).  Indeed, Plaintiff presented her employer with a doctor's note confirming that she could not lift more than 15 pounds.

Because Plaintiff has not provided evidence to show she was a qualified employee who could perform the functions of the store clerk required for employment at Dollar General, Defendant is entitled to summary judgment.  It is also evident that Plaintiff has failed to provide any evidence of discrimination or having been treated unfairly or even differently than any other employee.

Accordingly, it is **RECOMMENDED** that Defendant's motion to summary judgment, doc. 61, be **GRANTED** on all claims and judgment entered in favor of the Defendant.

**IN CHAMBERS** at Tallahassee, Florida, on July 23, 2008.


**s/     William C. Sherrill, Jr.**

**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.